# EXHIBIT 2

## Memorandum of Understanding

This Memorandum of Understanding was made on this day the 22nd of June 2011 by and between:

First Party: M/s Rosy Blue Trading LLC, a company duly registered and existing in Dubai- UAE under the trade license number 684421, located at 203-204, Al Qayada Building P.O. Box 98174, Deira Dubai, represented by Mr. Rihen Mehta, and referred to hereafter as the "First Party".

And

Second Party: Mr. Thiago Sabino de Freitas Abdala, Brazilian national, holder of Passport No. CZ 708608, residing at Ghoroob Mirdif, Building: 3A Flat: 206, Dubai, U.A.E;

And

Third Party: Ms. Priscila Silva Patto, Brazilian national, holder of Passport No. CZ 708606, residing at Ghoroob Mirdif, Building: 3A Flat: 206, Dubai, U.A.E;

Preamble:

Whereas, Mr. Rihen Mehta and the Second Party are the sole shareholders of the offshore company "FR Hueb International Limited" (the "Company"), an offshore company duly registered and existing in Jebel Ali Free Zone, Dubai, UAE, under the trade license 145424; and

Whereas, the Company specializes in the trading of Gold and Diamond jewellery under the brand name of "FR Hueb" (the "Brand Name"), and the sale of such manufactured Gold and Diamond Jewellery (as hereafter defined) both domestically and worldwide, with the exclusion of Brazil (the "Territory"); and

Whereas, Mr. Rihen Mehta represents Rosy Blue Trading LLC (the First Party), a company registered in Dubai under the license number 570141, located in Zone 4, 5th Floor, Gold Centre Bldg, Gold Souk, Deira, P.O.Box 54303, Dubai, UAE, which is specialized in jewellery and diamonds trading; and

Whereas, Mr. Rihen Mehta represents Rosy Blue (Eurasia) FZE (affiliate of the First Party) a company registered in Dubai Airport Free Zone and located at P.O Box 54303, Dubai- UAE, an affiliate company of Rosy Blue Trading LLC and hereafter referred to as the "Affiliate".

Whereas, the Second Party and the third Party are employed by the Affiliate, and have been mainly employed to manage the operation of the Company in partnership with the First Party as per this MOU; and



Whereas, the Second Party desires the assistance of the Third Party in connection with carrying out his responsibilities under this Memorandum of Understanding, and whereas, the Third Party and the First Party accepts such assistance.

Whereas, it is the intention of the First Party and Second Party to set forth certain understandings to regulate their relationship under the Company, and to further establish the terms and conditions of their continued cooperation and participation and their respective roles in the Company.

Now, therefore, in consideration of the mutual obligations of which sufficiency is acknowledged by the parties, all Parties have agreed to the following:

Article 1:

The above preamble is considered an integral part of this Memorandum of Understanding according to which the provisions of this Memorandum of Understanding are understood and applied.

Article 2:

The First Party and the Second Party agree that the management of the Company's operations shall be solely carried out by M/s Rosy Blue Trading LLC, according to the terms set forth in the "License Agreement" executed between the Company and M/s Rosy Blue Trading LLC on the 22ND of June 2011, and attached hereto as Appendix A. Accordingly, the First Party and the Second Party hereby agree that the Company shall only be responsible for promoting the Brand Name in the Territory, whereas all other operations shall be solely carried out by M/s Rosy Blue Trading LLC..

The First Party and the Second Party hereby agree that the Company shall operate according to the provisions of this Agreement and to the agreed Business Plan attached hereto as Appendix B.

Article 3:

The First Party and the Second Party hereby agree that the manufacturing of the Diamond Jewellery shall be carried out through Lucky Star Jewellery Exports (I) Ovt. Ltd , having its registered office at GJ-18 SDF VII, SEEPZ, Andheri (E), Mumbai – 400 096, India, or by International gold Company Pvt. Ltd G-48 Gems and Jewellery Complex, SEPZ, Andheri ( E) Mumbai-400096, or by any other manufacturer named by the Second Party (and hereafter referred to as the "Manufacturer").

Article 4:

The Second Party and the Third Party shall be responsible for providing the Manufacturer the designs of the Diamond Jewellery to be fabricated. This obligation shall be their assigned task while they are employed by the Affiliate.

The First Party shall be responsible for closely monitoring the Manufacturer's work, in respect of the fabrication of the Diamond Jewellery, and shall be responsible for ensuring the conformity of the manufactured Diamond Jewellery with the requested designs.

Article 5:

5.1- The profits of the Company shall be calculated at the end of each calendar year, after deduction of the expenses as illustrated in Appendix C hereto, and shall be distributed in the proportion of 50% to the First Party and 50% to the Second Party.

5.2- The Parties hereby agree that an amount of USD 5,000 per month shall be borrowed by the Second Party from the First Party at the end of each month.

5.3- At the end of each calendar year, once the net profit is computed as per clause 5.1 above, and prior to profit distribution, the aggregate amount borrowed by the Second Party further to clause 5.2 above, shall be offset against the Second Party's share of the Company's net profit for such year and paid to the First Party.

Article 6:

The Second Party, at its own expense, shall indemnify, defend and hold the First Party and the Company harmless from and against any and all third-party suits, actions, investigations and proceedings, and related costs and expenses (including reasonable attorney's fees) resulting solely and directly from the indemnifying Party's negligence or recklessness, or breach, or willful misconduct in relation to the brand name "FR Hueb".

Article 7:

During the term of this Memorandum of Understanding, the Second Party and the Third Party shall not individually nor in conjunction with any person, firm, partnership, corporation or other third party as principal, agent, shareholder, director, employee, guarantor or otherwise or in any other manner whatsoever, directly or indirectly, carry on or be engaged in or concerned with or interested in or advise in the operation of any competitive business in the Territory, without the prior written consent of the First Party. Failing to abide by this obligation herein, the Second Party and the Third Party undertake to compensate the First Party for the reduction in sales, if any, for the period between committing the breach and the discovery of the breach by the First Party.

Article 8:

8.1- This Memorandum of Understanding shall be effective as of the date hereof and shall remain in full force and effect for as long as both Parties remain Shareholders or unless earlier terminated pursuant to the provisions set forth below. All rights and obligations resulted while a partnership or joint venture relationship exists between the First Party and the Second Party shall survive the termination of this MOU.

8.2- This Memorandum of Understanding shall terminate forthwith and the Company wound up, without notice, upon the occurrence of any of the following events:

a- Mutual written agreement of the Parties;

b- The dissolution, liquidation or bankruptcy of the Company, or the marshalling or assignment of its assets for the benefit of creditors or other similar events, or

c- The dissolution, liquidation or bankruptcy of a Shareholder, or the marshalling or assignment of its assets for the benefit of creditors or other similar events.

Article 9:

The Parties mutually agree to perform their respective obligations under this Memorandum of Understanding in good faith in the best interest of the Company and shall use their commercial and technical experience and their best efforts to fulfill this Memorandum of Understanding's obligations to their mutual benefit.

Article 10:

The validity, construction, performance, and effect of the undertakings of the Parties herein this Memorandum of Understanding shall be governed and determined in accordance with the laws of the UAE without reference to principles of conflicts of laws.

Article 11:

All disputes arising between the Parties in relation to this Memorandum of Understanding, or arising thereof, or in relation thereto, including but not limited to, its interpretation, validity, enforceability, nullity or termination shall be referred to the Courts of the Emirate of Dubai.

Article 12:

a. This Memorandum of Understanding represents the entire agreement of the Parties in respect of the subject matter hereof and supersedes and replaces all or any previous arrangements, understandings, statements and representations between each of them in that respect.

b. The Parties warrant and confirm to each other that the execution, delivery and performance of this Memorandum of Understanding do not and shall not violate any laws and regulations or agreements and other undertakings to which each Party is a party.

c. If any of the provisions of this Memorandum of Understanding or any other agreements, schedules or arrangements entered into pursuant hereto shall become invalid or unenforceable; such provisions shall not affect the interpretation, application or validity of the other provisions of this Memorandum of Understanding, all of which shall remain in full force and effect.

d. No amendment to this Memorandum of Understanding shall be valid unless executed in writing and signed by the Parties hereto.

IN WITNESS WHEREOF, the Parties, by their duly authorized representatives, have executed this Memorandum of Understanding.

First Party:                             Second Party:                          Third Party

Signature:                               Signature:                             Signature:

Witness:

Witness: